UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-70-KSF

MAGNUM HUNTER RESOURCES CORPORATION                    PLAINTIFF

v.                              **OPINION & ORDER**

HALL, KISTLER & COMPANY, LLP                           DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the defendant, Hall, Kistler & Company, LLP ("Hall Kistler"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This matter is fully briefed and is ripe for review.  For the reasons set forth below, Hall Kistler's motion will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Magnum Hunter Resources Corporation ("Magnum Hunter"), is a publicly traded oil and gas exploration company based in Texas.  In late 2010 and early 2011, Magnum Hunter was in the process of determining whether to acquire NGAS, a publicly traded oil and gas exploration and production company based in Lexington, Kentucky.  On December 23, 2010, Magnum Hunter and NGAS entered into an Arrangement Agreement giving Magnum Hunter the right to acquire NGAS, and contemplated a closing on or before April 15, 2011.  The Arrangement Agreement also provided a period of time in which to conduct due diligence and provided for the delivery to Magnum Hunter of NGAS' audited financial statements for the years 2009 and 2010.

On February 28, 2011, during the due diligence period, Magnum Hunter was provided an audit report issued by Hall Kistler covering the 2009 and 2010 financial statements of NGAS. Hall Kistler is an accounting firm located in Canton, Ohio. The audit report certified that the NGAS financial statements were true and accurate, stating:

> In our opinion, the financial statements referred to above present fairly, and in all material respects, the consolidated financial position of NGAS Resources, Inc., and subsidiaries as of December 31, 2010 and 2009, and the consolidated results of its operation and its cash flows for each of the three years ended December 31, 2010 in conformity with the accounting principles generally accepted in the United States of America.

[DE #60-1]. The audit report also included a "Going Concern" statement, which described the facts that raised substantial doubt about NGAS's ability to continue as a going concern if the Magnum Hunter transaction was not completed. At the time of the audit, NGAS was in default on certain loans and had obtained conditional forbearance from its lenders until March 31, 2011 due to the pending sale to Magnum Hunter.

During the due diligence period, Magnum Hunter focused its due diligence efforts on NGAS' contracts, oil and gas production, and oil and gas reserves. With respect to the NGAS financial statements and accounting aspects of the transaction, Magnum Hunter contends that it relied exclusively on the audit work of Hall Kistler, based on the assumption that Hall Kistler performed its audit of NGAS' financials with the appropriate standard of care and in accordance with Generally Accepted Accounting Principles ("GAAP") applicable to an accounting firm auditing a publicly traded company.

On April 13, 2011, Magnum Hunter completed its purchase of NGAS based in part, it alleges, on its reliance on the audited financial statements prepared by Hall Kistler. The purchase

involved an exchange of Magnum Hunter stock, plus Magnum Hunter paying off NGAS bank and convertible note debt, plus payments to certain parties who contracted with NGAS.  The fair value of the consideration paid by Magnum Hunter for the stock of NGAS exceeded $124,000,000.00.

After the purchase, Magnum Hunter alleges that it subsequently discovered that the audited financial statements of NGAS were inaccurate for the following reasons: (1) an understatement of NGAS' asset retirement obligations ("ARO") in the amount of $8,677,688; (2) and overstatement in NGAS' pipeline assets in the amount of $1,741.486; and (3) an unrecorded NGAS liability to the Commonwealth of Kentucky for withholding taxes in the amount of $3,650,177.

The first alleged inaccuracy relates to NGAS' liability for any obligation and cost associated with the retirement of the oil and gas wells (i.e., the costs to plug and abandon a well).  Hall Kistler has acknowledged not only that NGAS did not properly calculate its ARO in accordance with GAAP, but also that it did not record any ARO on its balance sheet as required by Financial Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 410-20.  Based on its own well analysis, Magnum Hunter now contends that a liability of $6,677,688 for ARO should have been recorded on NGAS' books as of December 31, 2010.  Additionally, Magnum Hunter alleges that NGAS failed to record any ARO with respect to a gold mine in Alaska which was owned by NGAS at the time of the acquisition.  Based on its evaluation, Magnum Hunter contends that it would cost $2,000,000 to remediate the property and has made such an adjustment to its books to reflect this ARO liability.  Thus, in total, Magnum Hunter alleges that it was forced to make adjustments to its books totaling $8,677,688.

The second alleged inaccuracy relates to 485 miles of pipeline sold by NGAS to Seminole Energy Services, LLC ("Seminole") during the third quarter of 2009.  Magnum Hunter contends that

$1,741,486 of pipeline assets, which had been sold to Seminole, remained on NGAS' books.  As a result, Magnum Hunter contends that NGAS' books were over-inflated by $1,741,486.

The final alleged inaccuracy was revealed when Magnum Hunter received a notice from the Revenue Cabinet of the Commonwealth of Kentucky indicating that NGAS had failed to withhold taxes in 2007 with respect to distributions made to minority investors in a particular NGAS sponsored drilling partnership.  The tax liability, plus penalties, fees and interest, amounted to $25,773.  Magnum Hunter also alleges that after reviewing all other NGAS sponsored drilling partnerships, it determined that NGAS had also failed to withhold any taxes for the years 2008 and 2009 with respect to over 30 partnerships.  According to Magnum Hunter, the total liability using the same methods employed by the Commonwealth of Kentucky, if the Revenue Cabinet issued notices on all NGAS sponsored drilling partnerships for these years, would be $3,650,177.  After voluntarily approaching the Revenue Cabinet and participating in settlement discussions, the Commonwealth of Kentucky and Magnum Hunters agreed to resolve all outstanding tax liability for $250,000.  The legal fees incurred in negotiating this settlement amount to $82,806.55.  Magnum Hunter claims damages in the amount of the $250,000 settlement paid to the Revenue Cabinet, the $25,773 paid for the initial tax penalty, and the $82,806.55 in legal fees.

Based on these alleged errors, Magnum Hunter now brings this civil action.  In its complaint, Magnum Hunter asserts a claim against Hall Kistler for negligent misrepresentation, claiming that Hall Kistler, as professional accountants, provided certifications of financial statements which were incorrectly and negligently made, knowing that Magnum Hunter was relying on these certifications. Magnum Hunter further alleges that if the incorrect financial statements had not been certified, then the purchase price for NGAS, including all of the amounts paid by Magnum Hunter in connection

with the acquisition, would have been substantially less, or alternatively, Magnum Hunter would not have entered into the purchase transaction.  Magnum Hunter seeks to recover its actual damages, exemplary damages, pre- and post-judgment interest, and attorneys' fees.  Discovery has closed, and Hall Kistler has filed this motion for summary judgment.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record in its

entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be

granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is

bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80

(6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention

to those specific portions of the record upon which it seeks to rely to create a genuine issue of

material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    ANALYSIS

Hall Kistler moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure on Magnum Hunter's sole claim for negligent misrepresentation. In Kentucky, negligent

misrepresentation claims are governed by the Restatement (Second) of Torts § 552. *Presnell Constr.*

*Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004). This section provides:

> One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon the information, if he fails to
> exercise reasonable care or competence in obtaining or communicating the
> information.

Restatement (Second) of Torts, § 552(1) (1977). While Hall Kistler acknowledges that there are

genuine issues of material fact with respect to the breach of duty element of the tort as to the claims

based on the oil and gas well ARO, gold mine ARO, and the pipeline, it argues that evidence shows

that Magnum Hunter did not rely on the alleged misstatements in the audited financial statements

in making its decision to purchase NGAS or in negotiating the contract price. Additionally, Hall

Kistler argues that even if Magnum Hunter relied on the audited financial statements, such reliance

would not have been justified as a matter of law because Magnum Hunter should have performed its own due diligence on all aspects of NGAS that were pertinent to the transaction.

With respect to the Kentucky withholding tax issue, Hall Kistler denies that there was any arguable misrepresentation and that Magnum Hunter did not actually and justifiably rely on the alleged misrepresentation relating to the Kentucky withholding taxes.  Because the reliance issue is common to all of the alleged misrepresentations, the Court will consider this issue first.

> A.    **A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO MAGNUM HUNTER'S ACTUAL AND JUSTIFIABLE RELIANCE ON THE ALLEGED MISREPRESENTATIONS**

Although this is a complex case, the actual reliance issue is simple.  Hall Kistler argues generally that Magnum Hunter cannot satisfy the actual reliance element of negligent misrepresentation because although Magnum Hunter undertook due diligence on those portions of the audited financial statements that were material in valuing the company, it did not rely on them for any matter that was important to it in assessing the value of NGAS.  Magnum Hunter, however, has come forward with specific evidence that it actually relied on the audited financial statements prepared by Hall Kistler.  Both Gary C. Evans, Magnum Hunter's CEO, and Ron Ormond, Magnum Hunter's CFO, testified that they relied on the audited financial statements prepared by Hall Kistler. *See* Evan's Deposition, pp. 20-21, 47, 81 [DE #60-20], and Ormond's Deposition, pp. 45 and 78 [DE #60-25].   Thus, a genuine issue of material fact remains as to this element of negligent misrepresentation.

Whether this reliance was justified is a closer call.  Hall Kistler argues that Magnum Hunter was not justified in relying on the audited financial statements for two reasons. For its first reason, Hall Kistler contends that because Magnum Hunter did not conduct its own accounting due diligence

7

on the portions of the financial statements containing the alleged misrepresentations, it must not have considered NGAS' errors related to the ARO, pipeline assets, and withholding taxes material to the transaction.  However, as Magnum Hunter notes, these alleged errors amount to over $13,000,000. Magnum Hunter has cited the testimony of Evans, David Krueger, Magnum Hunter's CAO, and Jim Denny, Magnum Hunter's Executive Vice-President of Operations, who all stated that the information in the audited financial statements relating to the ARO, pipeline assets and withholding taxes issues were material to the transaction [Evans' Deposition, DE #60-20 p. 163, 165; Krueger Deposition, DE # 60-23, pp. 87, 110-11, 174; Denny Deposition, DE #60-18, 109-110].

Second, Hall Kistler also argues that even if the alleged misstatements were material, Magnum Hunter's reliance thereon was not justified because, as a matter of law, it should have conducted its own due diligence and not relied solely on the audited financial statements prepared by Hall Kistler.  Both parties cite cases from various jurisdictions to support their arguments, but are unable to point to any binding caselaw addressing the issue before this Court.  While Hall Kistler cites several cases for its claim that Magnum Hunter was not justified in relying on the audited financial statements, these cases are distinguishable, in large part, because they do not involve audited financial statements of a publicly traded company. *See e.g., TSG Water Resources, Inc. v. D'Alba & Donovan Certified Public Accountants, P.C.*, 260 Fed.Appx 191 (11th Cir. 2007); *Harner v. Prudential-Bache Securities, Inc.*, 35 F.3d 565 (6th Cir. 1994).  Additionally, some of the cases relied upon by Hall Kistler address scenarios where either the plaintiff had prior knowledge of the truth - making reliance on a misrepresentation unjustified - or contractual language disclaiming any responsibility for misstatements - also making reliance unjustified.  In this case, however, it is undisputed that Magnum Hunter knew nothing about the alleged errors until after closing, and Hall

Kistler did not present any disclaimers to Magnum Hunter.  In fact, the audit report itself was unqualified.

While *White v. BDO Seidman, LLP*, 549 S.E.2d 490, 491 (Ga.Ct.App. 2001), a case cited by Hall Kistler, did concern an audit report, it too is distinguishable.  The plaintiffs in *White* admitted that they never saw the defendant's audit report.  As a result, they did not rely on any of the representations contained therein.  In this case, however, there is evidence that Magnum Hunter actually relied on the audit report.

Additionally, the audit of NGAS, a publicly traded company, was subject to the heightened scrutiny of the Securities Exchange Commission ("SEC") and the Public Company Accounting Oversight Board ("PCAOB").  The PCAOB is a non-profit corporation established by Congress to oversee those firms which engage in public company audits.  *See* Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201, *et seq*.  Its purpose is to protect the general public by promoting accurate audit procedures and information.  *Id*.  Other courts have concluded that a party is justified in relying on audited financial statements of a publicly traded company.  *See Murphey v. Lattimore, Black, Morgan & Cain, P.C.*, 2011 WL 2420265, *3 (M.D. Tenn. June 13, 2011); *E\*TRADE Financial Corp. v. Deutsche Bank AG*, 631 F.Supp.2d 313, 383-85 (S.D.N.Y. 2009); *Travelers Casualty and Surety Co. of Am. v. Ernst & Young, LLP*, 542 F.3d 475, 484 (5th Cir. 2008); *In re Health Risk Mgmt., Inc. v. Loop Corp.*, 319 B.R. 181, 191 (D. Minn. 2005); *Spherex, Inc. v. Alexander Grant & Co.*, 451 A.2d 1308, 1313 (N.H. 1982)

Based on the evidence presented and this Court's review of these cases, the Court cannot find, as a matter of law, that Magnum Hunter did not actually and justifiably rely on Hall Kistler's

audited financial statements of NGAS.  Magnum Hunter's reliance is a question of fact for the jury

and cannot establish a basis for summary judgment on the issue of reliance.

      **B.**    **A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER HALL KISTLER NEGLIGENTLY MISREPRESENTED NGAS' WITHHOLDING TAX LIABILITY**

The Court turns next to the issue of whether the audited financial statements prepared by Hall

Kistler for NGAS  were inaccurate because they did not reflect a potential tax liability based on the

failure to pay withholding taxes.  While there is no dispute that the audit incorrectly cited no

withholding tax liability, Hall Kistler argues that it cannot be found liable for its failure to do any

audit work related to NGAS' withholding tax liability because it relied on a letter from another

accountant.  The letter, dated March 4, 2010, from Daryl Greattinger, CPA, states as follows:

> I have evaluated the tax position Daughtery Petroleum, Inc. has taken relative to their gold properties, oil and gas properties, intangible drilling costs, depletion, and depreciation.  I feel that it more likely than not (MLTN) that their positions in these areas would be sustained upon examination by the applicable taxing authorities.

> In addition, I have considered the filing requirements in the various states that Daughtery Petroleum, Inc. generated income.  There would be no additional tax considerations in any of those states.  However, there could be some immaterial filing fees for zero returns.

[DE # 60-15].

Daughtery Petroleum, Inc. ("DPI") was a wholly owned subsidiary of NGAS.  All of NGAS'

oil and gas operations were conducted through DPI.  NGAS conducted a substantial portion of its

operations through drilling programs owned in part by third-party investors.  Under this Drilling

Program structure, a general partnership was formed, which owned the wells to be developed.  DPI

typically owned 20% of that general partnership.  A limited partnership would own the other 80%.

DPI served as the managing general partner of the limited partnership and owned 1% of the limited partnership.  The other 99% of the limited partnership was owned by private investors.

Importantly, the Greattinger letter says nothing about partnership taxes or withholding taxes. Moreover, Magnum Hunter's expert, Jim Tencza, a CPA, opines that Hall Kistler improperly failed to address withholding taxes in its audit and was not entitled to exclusively rely on the Greattinger letter [Tencza Deposition, DE #60-2, pp. 186-87].  Rather, Tencza opined that Hall Kistler was obligated to make some investigation into Greattinger's competence and independence, and to have a discussion with NGAS management about withholding taxes.  By using Greattinger's letter and undertaking no further investigation, Tencza opines that Hall Kistler breached the standard of care.

Additionally, Hall Kistler's own expert, Allen Waddle, acknowledged that the withholding tax liability should have been recorded on NGAS' books.  Waddle opined that Hall Kistler should have raised this issue with NGAS management [Waddle Deposition, DE #60-28, pp. 189-80]. Based on this evidence, Magnum Hunter has come forward with evidence of a genuine issue of material fact with respect to whether Hall Kistler breached the standard of care by failing to ensure that NGAS was properly withholding all taxes with respect to the NGAS drilling partnerships. Accordingly, Hall Kistler is not entitled to summary judgment on this issue.

### C.   HALL KISTLER IS NOT ENTITLED TO SUMMARY JUDGMENT ON MAGNUM HUNTER'S CLAIM FOR DAMAGES

In addition to seeking summary judgment on Magnum Hunter's negligent misrepresentation claim, Hall Kistler also challenges Magnum Hunter's entitlement to and/or calculation of certain damages.  First, Hall Kistler argues that Magnum Hunter should not be allowed to recover any attorneys' fees expended in obtaining a settlement with the Revenue Cabinet related to the

withholding tax liability. Next, Hall Kistler challenges Magnum Hunter's calculation of NGAS' ARO related to the oil and gas wells. Third, Hall Kistler challenges Magnum Hunter's calculation of NGAS' ARO costs related to closing the gold mine. Finally, Hall Kistler argues that Magnum Hunter should not be allowed to pursue any claim related to the pipeline incorrectly recorded on NGAS' books. Each of these arguments is discussed fully below.

### 1.    ATTORNEYS' FEES

Hall Kistler argues that Magnum Hunter should not be allowed to recover any attorneys' fees expended in negotiating a settlement with the Kentucky Revenue Cabinet. Hall Kistler points to the American rule, where each party is to pay its own attorneys' fees unless an exception is created by statute or a contract expressly provides for payment of such fees. *See Strohschein v. Crager*, 258 S.W.3d 25, 30 (Ky.App. 2007). However, Magnum Hunter contends that it is entitled to recover its attorneys' fees based on the trial court's powers in equity, citing *Commonwealth of Kentucky v. Bell*, 2012 WL 3538472, *4 (Ky. App. Aug. 17, 2012) and *Batson v. Clark*, 980 S.W.2d 566 (Ky. App. 1998). Magnum Hunter argues that based on these cases, an award of attorneys' fees is justified by the court's exercise of inherent power to "do that which is reasonably necessary for the administration of justice with the scope of [its] jurisdiction." *Bell*, 2012 WL 3538472 at *4.

While it is clear that Magnum Hunter is not relying on any statute or contract to recover its attorneys' fees, Magnum Hunter is asking this court to exercise its equitable powers. Until the Court has heard the evidence in this case, any judgment on this issue is premature. Accordingly, Hall Kistler's motion for summary judgment on Magnum Hunter's claim for attorneys' fees related to the withholding tax liability will be denied without prejudice.

## 2.    DAMAGE CALCULATION OF NGAS' OIL AND GAS WELL ARO

Magnum Hunter alleges that after the acquisition, it discovered that NGAS had not recorded any ARO related to the oil and gas wells on its balance sheet.  As a result, it conducted its own analysis to determine the amount of ARO which should have been listed as a liability.  This calculation was performed by Brint Camp and David Krueger, Chief Accounting Officer.  Camp provided the relevant plugging and abandonment costs to Krueger, who then applied the remaining calculations required by GAAP, such as the inflation and discount rate, to arrive at the ARO to be booked.  Based on these calculations, Magnum Hunter is seeking to recover $6,677,688 -  the amount it added to its books as a liability.  Hall Kistler, however, claims that Magnum Hunter does not have adequate evidence to submit its $6,677,688 ARO damage claim to the jury on the grounds that Camp was not qualified to estimate the plugging and abandonment costs.

In response, Magnum Hunter argues that Camp, a geologist with over thirty-five years experience in the oil and gas industry, is imminently qualified to estimate plugging and abandonment costs.  Camp was the Vice President of Geology of NGAS prior to the acquisition, and now maintains the same position with Magnum Hunter.  During his career, he has overseen the drilling of well sites and the plugging and abandonment of all wells. [Camp Deposition, DE #60-17, pp.7-17].  Moreover, Magnum Hunter's expert, Jim Tencza, has opined that Camp's analysis, estimate and calculation is reasonable and appropriate [DE #60-2].  On the other hand, Hall Kistler's own expert, Allen Waddle, has conceded that there is no documentation in Hall Kistler's files or work papers demonstrating that it did any testing to determine if the ARO costs were reasonable. [Waddle Deposition, DE #60-28, pp. 151-52].  Additionally, Waddle stated that NGAS' ARO calculations were not in accordance with GAAP, and that Hall Kistler did nothing to correct that fact.  Certainly,

Magnum Hunter has come forward with sufficient evidence to present the issue of oil and gas well ARO damages to the jury.

### 3.   DAMAGE CALCULATIONS RELATED TO CLOSING THE GOLD MINE

In addition to failing to record any ARO for the oil and gas wells, Magnum Hunter alleges that NGAS failed to properly record any ARO for the gold mine located in Alaska. Upon investigation, Magnum Hunter determined that it would cost approximately $2,000,000 to clean up and remediate the gold mine. Hall Kistler contends that Magnum Hunter cannot establish that it has or will incur this liability. Specifically, Hall Kistler argues that there is no evidence to support Magnum Hunter's calculation of $2,000,000 to retire the mine. Additionally, Hall Kistler contends that Magnum Hunter is in negotiations with a third party to purchase the mine, which will result in income which would offset any costs associated with closing the mine.

Whether or not Magnum Hunter will sell the gold mine is speculation at this time. The present issue is whether Hall Kistler is negligent for any misrepresentation on the audited financial statements related to the gold mine and what damages, if any, resulted to Magnum Hunter. In response to Hall Kistler's argument, Magnum Hunter points to the opinion of its expert, Jim Tencza, who has opined that: (1) Hall Kistler was negligent in not requiring NGAS to book an ARO related to the gold mine; and (2) that $2,000,000 is a reasonable estimate of such liability [DE #60-2, p. 15]. To the extent that Hall Kistler complains that Tencza relies on alleged hearsay in reaching this conclusion, the Court finds that as an expert, Tencza can rely on inadmissible hearsay under Rule 703 of the Federal Rules of Evidence. In reaching his opinion, Tencza obtained information about the costs of retiring a gold mine from an individual with first hand knowledge about the existing

conditions at the site. This is the type of information reasonably relied upon by accountants in estimating an ARO. While Hall Kistler disagrees with Tencza's opinion, this is ultimately an issue for the jury.

### 4. DAMAGES RELATED TO THE PIPELINE INCORRECTLY MAINTAINED ON NGAS' BOOKS

Hall Kistler's final challenge to Magnum Hunter's damages relates to the pipeline assets that improperly remained on NGAS' books despite the fact that they had been sold to Seminole in 2009. Hall Kistler contends that the $1,741,486 figure is only a book value, and doesn't take into account depreciation or the fact that the assets were not income-producing. It also argues that Magnum Hunter was aware that these assets had been sold to Seminole.

While Magnum Hunter concedes that it was aware that some pipeline assets were sold, it believed that the $1,741,486 on the books were assets related to the pipeline [Evans Deposition, DE #60-20, pp. 158-59]. Moreover, Tencza has opined that Hall Kistler was negligent in not assuring that the pipeline assets were removed from NGAS' books [Tencza Deposition, DE # 60-27 pp. 172-73]. In any event, Magnum Hunter has come forward with sufficient evidence to create a genuine issue of material fact that leaving the assets on the audited financial statements may have inflated the value of NGAS by some amount. The exact amount is a matter for the jury.

### IV. CONCLUSION

The Court, being fully and sufficiently advised, hereby **ORDERS** that Hall Kistler's motion for summary judgment [DE # 54] is **DENIED**.

This August 1, 2013.



**Signed By:**

**_Karl S. Forester_** $K S F$

**United States Senior Judge**